UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES<br><br>        Petitioners,<br><br>        vs.<br><br>PHENIX INVESTIGATIONS, INC.<br><br>        Respondent. | Case No. 1:18-mc-11<br><br>CASE IN OTHER COURT: *Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 (KBJ) and 16-cv-00014 (KBJ) |

**AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK,
AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES'
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
DISCOVERY FROM PHENIX INVESTIGATIONS, INC.**

Al Jazeera America, LLC, Al Jazeera Media Network, Al Jazeera International (USA) Inc., and Deborah Davies (collectively "Petitioners" or "Al Jazeera") respectfully submit this memorandum of law in support of their motion to compel discovery from non-party Phenix Investigations, Inc. ("Phenix"), as called for by two subpoenas Petitioners served on Phenix (the "Subpoenas") in connection with two consolidated actions pending in the U.S. District Court for the District of Columbia, styled *Ryan W. Zimmerman, et al. v. Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 (KBJ) (RMM) and 16-cv-00014 (KBJ) (RMM) (the "Underlying Actions").  Petitioners, Defendants in the Underlying Actions, respectfully seek an order transferring this motion to the Honorable Magistrate Judge Robin Meriweather to whom all discovery disputes in the Underlying Actions have been referred or, in the alternative, an order compelling compliance with the Subpoenas.

## STATEMENT OF FACTS

These cases arise out of the documentary *"The Dark Side: Secrets of the Sports Dopers"* produced by Al Jazeera (the "Documentary"), and broadcast for the first time on December 26, 2015.  Al Jazeera conducted an investigation into the doctors and pharmacists who supply performance-enhancing drugs ("PEDs"), which are often illegal and always banned by professional sports organizations.  To conduct the investigation, Al Jazeera realized that the subjects would not talk honestly to the media and that it would be necessary to use undercover methods.  A British athlete, Liam Collins ("Collins"), agreed to pose as an international athlete-in-training and to approach suspected PED suppliers.  As a result, he was able to secretly record over twenty-seven hours of conversations, over an entire week, with Charles Sly ("Sly").  Al Jazeera learned of Sly through undercover activities with other pharmacists and homeopaths who had admitted to having "doped people."[1]  These "dopers" described Sly as a partner who they called "a genius at outwitting WADA [The World Anti-Doping Agency]".[2]

During these twenty-seven hours of secretly recorded conversation, Sly, who holds a pharmacy degree, provided an extended tutorial of the means and methods through which world-class athletes are supplied with PEDs and taught how to avoid detection through the drug tests mandated by sports' governing bodies.  The investigation showed clearly that Sly was what he claimed to be:  a pharmacist in possession of PEDs who supplied drugs to professional athletes and advised on how to use them.  Sly had what he claimed were illegal drugs in his refrigerator, which he displayed to Collins.[3]  He even provided a sample to Collins during the hidden-camera filming.[4]  Sly's client Taylor Teagarden, a former Chicago Cubs catcher, admitted that he had

---

[1]  *See* the transcript of the Documentary, 16-cv-00013, ECF Dkt. No. 26-4, at 10.
[2]  *Id.* at 13.
[3]  *Id.* at 15-16.
[4]  *Id.*

taken illegal drugs supplied by Sly, and took a bag of purported drugs from Sly on camera.[5]  In addition to Teagarden, Sly identified six other current and former NFL and MLB players as users of banned performance enhancing drugs, including Plaintiffs Howard and Zimmerman.

Prior to the broadcast of the Documentary, Al Jazeera contacted all persons who were to be named in the Documentary, and provided them with an opportunity to respond to statements about them.  As part of this process, Al Jazeera notified Sly about statements he made that were to be included in the Documentary.[6]  Following this notification, on December 23 and 26, 2015, Sly sent two emails to Al Jazeera in which he denied the statements attributed to him.[7]

On December 22, 2015, shortly before Al Jazeera planned to broadcast the Documentary, Brian Bauer and Ben Ford, two private investigators from Phenix, visited Sly's family home. The investigators were so intimidating and threatening that Sly's sister, Kaitlyn Sly, called 911. Ms. Sly told the 911 operator that the investigators wore black overcoats, that one had "claimed to be a law enforcement officer but won't present a badge," and that "[i]t just seems like a very sketchy situation."[8]

---

[5]  *Id.* at 2, 22-23.  Following the broadcast of the Documentary, Major League Baseball suspended Teagarden for 80 games for violating MLB's Joint Drug Prevention and Treatment Program.  *See, e.g.*, Nick Martin, "MLB suspends Taylor Teagarden 80 games after investigating Al Jazeera report," WASHINGTON POST, Apr. 1, 2016, available at https://www.washingtonpost.com/news/early-lead/wp/2016/04/01/mlb-suspends-taylor-teagarden-80-games-after-investigating-al-jazeera-report/?utm_term=.0cb30ee784fc (stating that Teagarden was "the first player . . . to face a punishment directly because of Al Jazeera's 'The Dark Side: The Secret World of Sports Doping.'").  A true and correct copy of this article is attached as Exhibit I to the March 2, 2018 Declaration of Rachel Stevens ("Stevens Decl.") filed herewith.

[6] *See* Stevens Decl. at ¶ 4.

[7] *See id.* at ¶ 5.

[8]  A recording of the 911 call is available at https://www.huffingtonpost.com/entry/911-call-peyton-manning-doping_us_56b42379e4b04f9b57d92158.  *See also* Stevens Decl., Exhibit D (attaching a true and correct copy of Will Hobson and Justin Wm. Moyer, "Inside Peyton Manning's secret investigation into Al Jazeera documentary," WASHINGTON POST, Feb. 4, 2016, available at https://www.washingtonpost.com/sports/inside-peyton-mannings-secret-investigation-into-al-jazeera-documentary/2016/02/04/d0da2f04-cb05-11e5-a7b2-5a2f824b02c9_story.html?utm_term=.e487c4085ffb); Stevens Decl., Exhibit K (attaching a true and correct copy of Noelle Phillips, "Sly family called 911 when Peyton Manning's investigators knocked," DENVER POST, Feb. 5, 2016, available at https://www.denverpost.com/2016/02/05/sly-family-called-911-when-peyton-mannings-investigators-knocked/).

On December 23, 2015, the investigators returned to Sly's home and interrogated Sly. Sly then recorded a video purportedly "recanting" his statements to Collins, and subsequently emailed a video file of that recording to Al Jazeera.  We invite the court to review this brief video.[9]  Sly, who plainly appears nervous and is reading from a script, says in the video that "the statements or any recordings or communications that Al Jazeera plans to air are absolutely false and incorrect.  To be clear, I am recanting any such statements and there is no truth to any statement of mine that Al Jazeera plans to air."  In other words, while apparently having no recollection of what he had actually said over days of conversations with Collins, Sly was unconditionally stating that every single thing he said to Collins over a week of meetings was false, including facts that had been corroborated by other sources.

## THE DISCOVERY DISPUTE

On January 5, 2016, Plaintiffs filed the Underlying Actions.  They claimed that the statements Sly made about them that were included in the Documentary were false and defamatory.  Plaintiffs, who are admittedly all-purpose public figures, cannot prevail on their libel claims unless they allege and prove by clear and convincing evidence that Defendants published the statements about them with "actual malice," *i.e.*, with "knowledge of the falsity of the defamatory statements" or "a reckless disregard for the truth or falsity of those statements." *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988).  A libel complaint must be dismissed at summary judgment if the plaintiff cannot show sufficient evidence of the defendant's actual malice.  *Lohrentz v. Donnelly*, 350 F.3d 1272, 1283-84 (D.C. Cir. 2003).

---

[9]  Sly's statement is available at https://www.youtube.com/watch?v=sf2-8V0K3oM.

Plaintiffs alleged that Sly was the only source of information about them and they claim that this fact supports a finding of actual malice.[10]   They also cited as facts supporting actual malice Al Jazeera's decision to broadcast the Documentary after receiving Sly's hostage-style "recantation," arguing that Al Jazeera "knew prior to publication that *the sole source of the allegations* had recanted these allegations."[11]

Al Jazeera intends to seek summary judgment dismissing Plaintiffs' complaints at the close of discovery in the Underlying Actions.  One of the grounds for dismissal will be that Plaintiffs failed to show by clear and convincing evidence that Al Jazeera broadcast with actual malice.  Central to this defense and, therefore appropriate matters to explore in discovery, are whether Sly's statements on hidden camera were credible; whether Sly's "hostage video" should have given Al Jazeera obvious reasons to doubt his truthfulness; and whether the video was made under duress (as suggested by Sly's family's 911 call).[12]

In support of that discovery, on December 8, 2017, Petitioners served a subpoena *duces tecum* on Phenix,[13] and on February 9, 2018, Petitioners served a subpoena *ad testificandum* on Phenix seeking testimony pursuant to Federal Rule 30(b)(6).[14]  On December 29, 2017, Phenix responded to the document subpoena, which sought ten narrow categories of relevant

---

[10] *See* Zimmerman First Am. Compl. (ECF Dkt No. 9), ¶¶ 50 ("lone source"), 52, 55 ("sole source"), 73, 84; Howard First Am. Compl. (ECF Dkt No. 10), ¶¶ 53, 55, 58, 76 (same); Zimmerman Opp. (ECF Dkt No. 30), at 1 ("sole source"), 9 ("lone source"); Howard Opp. (ECF Dkt No. 30) at 1, 9 (same).

[11] *See* Zimmerman First Am. Compl. (ECF Dkt No. 9), ¶¶ 1, 53-55, 61, 73, 84; Howard First Am. Compl. (ECF Dkt No. 10), ¶¶ 1, 56-57, 64, 76, 87) (emphasis added).

[12] As noted earlier, the Documentary corroborated Sly's claims of involvement in the elite athlete PEDs consulting business by, among other things: 1) including testimonials from Sly's business partners regarding Sly's involvement; 2) Taylor Teagarden's on-screen statements that he obtained banned substances from Sly; 3) Sly purporting to show Collins banned substances that Sly possessed; and 4) Sly's discussions demonstrating his knowledge in this field.

[13] *See* Exhibit E to the Stevens Decl.

[14] *See* Exhibit H to the Stevens Decl.  Although the deposition subpoena was only recently served, as explained in the Stevens Decl., the parties have met and conferred over the course of nearly two months regarding a possible deposition of Phenix.  *See* Stevens Decl. at ¶¶ 7- 14.

documents.[15]  In its response, Phenix refused to produce a single document; instead, it objected

to six of the ten requests on the grounds that, among other things, the requests seek information

protected from disclosure on the basis of an alleged privilege between Gibson Dunn & Crutcher,

LLP ("GDC"), the law firm that hired Phenix, and GDC's client.[16]  Phenix stated that it had no

documents responsive to four of the requests.[17]

      The Subpoenas, however, seek non-privileged information directly relevant to the issue

of actual malice.  Petitioners seek documents and testimony concerning what happened before

Sly recorded his "hostage video."  This is the same video upon which Plaintiffs have seized as

significant evidence of whether Sly was telling the truth in twenty-seven hours of taped

conversations with Collins.  Petitioners believe the evidence will show that the video was made

under duress created by Phenix investigators who appeared unannounced at Sly's family's house

one evening.

      During no less than three "meet and confers," during which Al Jazeera attempted at

length to negotiate a compromise to accommodate concerns raised by Phenix (the substance of

these meet and confer discussions are described in detail in Ms. Stevens' Declaration), Phenix

has refused to produce *a single document* requested by the Subpoenas.  It has also refused to

make available for deposition anyone at Phenix, including the Phenix investigators, whose

sudden appearance at Sly's house led to a 911 call from the Sly family, and ultimately to Sly's

hostage-style "recantation."  Instead, Phenix offered a weak substitute:  a deposition by written

questions about the Phenix investigators' interactions with Sly, and production of documents

related to Sly that they deem non-privileged, but with no indication whether any such documents

exist.  Furthermore, this minimal discovery was offered only if Petitioners surrendered their right

---

[15] *See* Exhibit E to the Stevens Decl.
[16] *See* Responses to Request Nos. 1-5 and 9, at Exhibit G to the Stevens Decl.
[17] *See* Responses to Requests Nos. 6, 7, 8, 10, at Exhibit G to the Stevens Decl.

to seek a live deposition of Phenix and agreed to forego further discovery of another athlete

mentioned in the documentary and also represented by GDC.[18]

In short, the Subpoenas, with which Phenix has refused to comply, seek non-privileged

evidence that is highly relevant to a central issue in these cases:  Plaintiffs' assertions that Al

Jazeera published statements about Plaintiffs with actual malice.  Al Jazeera is entitled to

production of all documents surrounding: 1) the interactions between Sly and Phenix; and 2) a

privilege log reflecting any responsive documents that are withheld from production.  Al Jazeera

is also entitled to a Rule 30(b)(6) deposition of Phenix.  There can be no question that this

discovery is relevant to Al Jazeera's pre-publication confirmation of Sly's statements and the

coerced nature of the Sly hostage style "recantation."

## **ARGUMENT**

### I.   **THIS COURT SHOULD TRANSFER THIS MOTION TO THE DISTRICT OF D.C. PURSUANT TO FRCP 45(f).**

Federal Rule of Civil Procedure 45(f) states that "[w]hen the court where compliance is

required did not issue the subpoena, it may transfer a motion under this rule to the issuing court

if the person subject to the subpoena consents or if the court finds exceptional circumstances."

Phenix declined to consent to have this dispute heard in the District of D.C.[19] Even so, this Court

may still transfer this dispute upon a finding of exceptional circumstances, which are present

here.

The Advisory Committee Notes to the 2013 Amendment to Rule 45(f) provide the

following guidance as to what constitutes "exceptional circumstances":

> The prime concern should be avoiding burdens on local nonparties subject
> to subpoenas, and it should not be assumed that the issuing court is in a
> superior   position   to   resolve   subpoena-related   motions.   In   some

---

[18] *See* Stevens Decl. at ¶ 12.
[19] *See id.* at ¶ 14.

circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

Moreover, "[t]he Seventh Circuit Court of Appeals has explained that by allowing for transfers, Rule 45(f) allows for consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in multiple fora as well as piecemeal appeals." *In re Motion to Quash Subpoena Issued to Non-Party JPMorgan Chase Bank, N.A.*, 2017 WL 6623060, at *2 (S.D. Ind. Dec. 28, 2017) (quoting *P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452, 458 (7th Cir. 2017)) (internal quotation marks omitted). This Court has also found that "exceptional circumstances exist warranting transfer where a ruling on the motion . . . could be inconsistent with the rulings of the issuing court or involves determination of a question central to the pending litigation." *In re Motion to Quash*, 2017 WL 6623060 at *3 (granting a Rule 45(f) motion when a dispute concerning a related subpoena was already before the issuing court) (internal quotation marks omitted).

"Exceptional circumstances" exist here to warrant transferring this motion to the District of D.C. Magistrate Judge Merriweather is in the best position to address the substantive issues raised in this Motion. All discovery disputed in the Underlying Actions have been referred to her, and, in addition to being familiar with the claims and defenses at issue, Petitioners have filed a motion to compel compliance with subpoenas served on GDC which raise issues similar to those raised by the instant motion. Resolution of both motions by Magistrate Judge Meriweather will eliminate the possibility of any inconsistent rulings, especially with respect to privilege issues raised by Phenix in its objections to the document subpoena. Finally, Phenix is

represented in connection with the Subpoenas by GDC, a Washington D.C-based law firm, so

Phenix cannot argue that it will be prejudiced by a D.C. court resolving this dispute.

## II.     IN THE EVENT THIS COURT DOES NOT TRANSFER THE MOTION, IT SHOULD ORDER PHENIX TO COMPLY WITH THE SUBPOENAS

### A.     Relevance is Broad at the Discovery Stage

Rule 45 of the Federal Rules of Civil Procedure governs discovery of non-parties by

subpoena.  "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted

under the discovery rules." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind.

2002).  The proper scope of discovery is as specified in Rule 26(b). *Noble Roman's, Inc. v.

Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) ("The limits and breadth of

discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45. E.g.,

Advisory Committee Note regarding 1991 amendments to Rule 45 ("non-party witness is subject

to the same scope of discovery under this rule as that person would be as a party to whom a

request is addressed pursuant to Rule 34")."); *Jackson v. Brinker*, 147 F.R.D. 189, 193–94 (S.D.

Ind. 1993) ("[t]he scope of material obtained by a Rule 45 subpoena is as broad as permitted

under the discovery rules ... if the material is relevant, not privileged, and is, or is likely to lead

to, admissible evidence, it is obtainable by way of a subpoena.") (internal citations omitted).

"The scope of material obtainable by a Rule 45 subpoena generally is measured by the same

broad relevancy standard applicable to party discovery under Rule 26(b)(1)." *Alerding Castor

Hewitt LLP v. Fletcher*, No. 116CV02453RLYMJD, 2017 WL 6035327, at *2 (S.D. Ind. Dec. 5,

2017)

Under the relevancy standard in Rule 26, "[w]here relevance is in doubt, [Rule 26(b)(1)]

indicates that the court should be permissive." *Higgins v. Koch Dev. Corp.*, No. 3:11-CV-81-

RLY-WGH, 2013 WL 3366278, at *1 (S.D. Ind. July 5, 2013) (citing *Truswal Sys. Corp. v.

*Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).  "[R]elevance under Rule 26(b)(1) has been construed more broadly for discovery than for trial."  *Id.* (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)).  Under Rule 26, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence, and relevancy is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-CV-00111-WTL, 2015 WL 7089725, at *1 (S.D. Ind. Nov. 13, 2015) (quoting *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)).

"[T]he deposition-discovery rules are to be accorded a broad and liberal treatment." *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)).

### B.      The Subpoenas Seek Highly Relevant Information

The information sought by the Subpoenas is critical to the issue of actual malice in the Underlying Actions and thus relevant to Al Jazeera's defense.  The Subpoenas seek documents, communications and testimony relating to Sly's hostage-style "recantation" video and the circumstances from which it resulted.  Plaintiffs have raised the "recantation" as a critical piece of evidence that they will seek to introduce to claim that Al Jazeera should have had serious doubts about Sly's veracity.  Al Jazeera intends to show that it believed that Sly was telling the truth in his twenty-seven hours of conversations with Collins, and that Sly's 55-second nervous recantation of everything he had ever said was not credible.  Al Jazeera is entitled to discovery of Phenix to explore the coercive circumstances leading to the "recantation," including the multiple visits to Sly's family's home by Phenix Investigations, which led to, among other things, a 911 call from Sly's family.

## CONCLUSION

For the foregoing reasons, Defendants Al Jazeera America, LLC, Al Jazeera Media

Network, Al Jazeera International (USA) LLC, and Deborah Davies respectfully request that:

1)      This Court transfer the motion to the District of D.C. pursuant to Federal Rule of

Civil Procedure 45(f); or in the alternative,

2)      Phenix be ordered to produce all documents relating to Phenix's interactions with

Sly or Sly's family, as well as a privilege log describing all documents that are

withheld; and

3)      Phenix be ordered to produce the person(s) most knowledgeable to testify about

this subject matter at a deposition pursuant to Federal Rule of Civil Procedure

30(b)(6).


Respectfully submitted.

Dated:  March 2, 2018

*/s/ Jackie M. Bennett, Jr.*
Jackie M. Bennett, Jr., Atty. No. 4112-49
Jayna M. Cacioppo, Atty. No. 25514-49
Steven C. Shockley, Atty. No. 2179-49
Taft Stettinius & Hollister LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204-2023
Office: (317) 713 3500
Fax: (317) 713 3699
JBennett@taftlaw.com
jcacioppo@taftlaw.com
sshockley@taftlaw.com

Andrew L. Deutsch
Rachel Stevens
DLA PIPER LLP
1251 Avenue of the Americas
New York, NY 10020
Office: (212) 335-4500

Fax: (212) 335-4501
andrew.deutsch@dlapiper.com
rachel.stevens@dlapiper.com

Charles Scheeler
DLA PIPER LLP
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
Office: (410) 580-3000
Fax: (410) 580-3001
charles.scheeler@dlapiper.com

*Counsel for Defendants Al Jazeera America,
LLC, Al Jazeera Media Network, Al Jazeera
International (USA), Inc., Deborah Davies*

## <u>Certificate of Service</u>

The undersigned hereby certifies that on March 2, 2018, a true and correct copy of

Petitioners' Memorandum of Law in Support of Motion to Compel Discovery from Phenix

Investigations, Inc., was filed electronically. Notice and copies of this filing will be sent via

electronic mail to counsel for Plaintiffs in the Underlying Actions, *Ryan W. Zimmerman, et al. v.*

*Al Jazeera America, LLC, et al.*, Case Nos. 16-cv-00013 (KBJ) and 16-cv-00014 (KBJ), pursuant

to prior agreement of the parties. Notice and copies will be sent to counsel for Phenix

Investigations, Inc. by certified U.S. Mail on March 2, 2018.

*/s/ Jackie M. Bennett*

22119203.1