# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AL JAZEERA AMERICA, LLC, AL JAZEERA MEDIA NETWORK, AL JAZEERA INTERNATIONAL (USA) INC., AND DEBORAH DAVIES | Civil Action No. 1:18-mc-00045 (KBJ/RMM) |

AL JAZEERA AMERICA, LLC, AL
JAZEERA MEDIA NETWORK, AL
JAZEERA INTERNATIONAL (USA) INC.,
AND DEBORAH DAVIES

       Petitioners,

  vs.

PHENIX INVESTIGATIONS, INC.

       Respondent.

Civil Action
No. 1:18-mc-00045 (KBJ/RMM)

*Related Cases*
No. 16-cv-13 (KBJ/RMM)
No. 16-cv-14 (KBJ/RMM)

## PHENIX INVESTIGATIONS, INC.'S REPLY BRIEF IN SUPPORT OF ITS CROSS-MOTION TO QUASH PETITIONERS' SUBPOENAS

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................3

     I.     AL JAZEERA HAS NOT ADVANCED ANY ARGUMENT
            JUSTIFYING A DENIAL OF PHENIX'S MOTION TO QUASH........................3

          A.     The Discovery Al Jazeera Seeks Is Not Relevant To Al Jazeera's
                Defenses. ...................................................................................................3

          B.     The Discovery Al Jazeera Seeks Is Privileged. ...........................................5

          C.     Production of the Discovery That Al Jazeera Seeks Would Create
                an Undue Burden on the Mannings and Phenix.........................................10

     II.     AL JAZEERA HAS FORFEITED ITS OPPOSITION TO PHENIX'S
            MOTION TO QUASH, LEAVING PHENIX'S MOTION UNOPPOSED..........11

CONCLUSION.....................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bose Corp. v. Consumers Union of United States, Inc.*,
466 U.S. 485 (1984)..................................................................................................4

*Cities Serv. Co. v. F.T.C.*,
627 F. Supp. 827 (D.D.C. 1984) ..............................................................................6

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ................................................................................6

*F.T.C. v. Boehringer Ingelheim Pharm., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) ................................................................................6

*Fed. Trade Comm'n v. Staples, Inc.*,
No. CV 15-2115 (EGS), 2016 WL 259642 (D.D.C. Jan. 21, 2016)....................8, 9

*Fox v. Am. Airlines, Inc.*,
389 F.3d 1291 (D.C. Cir. 2004) ............................................................................12

*Hertzberg v. Veneman*,
273 F. Supp. 2d 67 (D.D.C. 2003) ......................................................................6, 8

*Inst. For Policy Studies v. U.S.C.I.A.*,
246 F.R.D. 380 (D.D.C. 2007)..............................................................................12

*Jankovic v. Int'l Crisis Grp.*,
822 F.3d 576 (D.C. Cir. 2016) ................................................................................5

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
856 F.3d 106 (D.C. Cir. 2017) ................................................................................3

*Kidwell v. F.B.I.*,
813 F. Supp. 2d 21 (D.D.C. 2011) ........................................................................12

*McFarlane v. Sheridan Square Press, Inc.*,
91 F.3d 1501 (D.C. Cir. 1996) ................................................................................4

*In re Micron Tech., Inc. Sec. Litig.*,
264 F.R.D. 7 (D.D.C. 2010)...................................................................................11

*N. Carolina Right to Life, Inc. v. Leake*,
231 F.R.D. 49 (D.D.C. 2005).................................................................................10

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................................4

*Pendergrass v. U.S. Dep't of Justice*,
   Civ. A. No. 04-112 (CKK), 2005 WL 1378724 (D.D.C. June 7, 2005) ...............11

*Premier Election Sols., Inc. v. Systest Labs Inc.*,
   Civ. A. No. 09-1822, 2009 WL 3075597 (D. Colo. Sept. 22, 2009) ....................10

*Schiller v. NLRB*,
   964 F.2d 1205 (D.C. Cir. 1992) .........................................................................6

*In re Sealed Case*,
   146 F.3d 881 (D.C. Cir. 1998) .......................................................................6, 7

*SEC v. Nat'l Student Mktg. Corp.*,
   18 Fed. R. Serv. 2d 1302 (D.D.C. 1974) ...........................................................11

*Secord v. Cockburn*,
   747 F. Supp. 779 (D.D.C. 1990) ........................................................................4

*In re Subpoena No. 444921*,
   No. 06-167, 2006 WL 2355017 (D.D.C. Aug. 14, 2006) ......................................13

*In re Subpoena to Goldberg*,
   693 F. Supp. 2d 81 (D.D.C. 2010) ....................................................................10

*Texas v. United States*,
   798 F.3d 1108 (D.C. Cir. 2015) .......................................................................12

*United States v. AB Electrolux*,
   No. CV 15-1039 (EGS), 2015 WL 9950141 (D.D.C. Sept. 25, 2015) ....................8

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ...................................................................6, 8, 9

*Zimmerman v. Al Jazeera Am., LLC*,
   246 F. Supp. 3d 257 (D.D.C. 2017) ...................................................................4

**Rules**

Local Rule LCvR 7 ................................................................................................12

Fed. R. Civ. P. 26 .............................................................................................3, 9

Fed. R. Civ. P. 45 ...............................................................................................11

## INTRODUCTION

The four-plus-page introduction to Al Jazeera's latest brief amply illustrates why Al Jazeera's Motion to Compel should be denied and why Phenix's Motion to Quash should be granted.  It exposes Al Jazeera's third-party discovery effort as an exercise in misdirection.

The most prominent feature of that introduction is a complaint about Plaintiffs' alleged "shocking attempts to hide relevant evidence," Pet'rs' Reply, ECF Dkt. No. 19, at 3.  Whatever the basis for Al Jazeera's complaint—the information has been redacted from Phenix's view—it has nothing to do with Phenix and whether information in its possession is relevant to Al Jazeera's defenses.

Then, in an effort to substantiate their false claim that Phenix set out to "intimidate Sly and coerce him to recant," Pet'rs' Reply, at 2, Al Jazeera misleadingly republishes the transcript of a 911 call that had been obtained by the *Washington Post*, while eliding the end of the story— that, once the misunderstanding that prompted the 911 call was cleared up, the Slys said "the men could stay."[1]

And finally, seeking to prevent any response to its latest salvo, Al Jazeera absurdly argues that, while Al Jazeera was free to move to compel, Phenix was not permitted to file its Motion to Quash, and thus cannot reply in support of that motion.  Pet'rs' Reply, at 3-4.

These non-substantive points hardly satisfy the heightened standard that courts impose on parties seeking discovery from non-parties to a dispute, but that Al Jazeera chose to emphasize them is revealing nonetheless.  It highlights that Al Jazeera has nothing substantial to say on the

---

[1]  *See Inside Peyton Manning's secret investigation into Al Jazeera documentary*, WASH. POST (Feb. 4, 2016), https://www.washingtonpost.com/sports/inside-peyton-mannings-secret-investigation-into-al-jazeera-documentary/2016/02/04/d0da2f04-cb05-11e5-a7b2-5a2f824b02c9_story.html?utm_term=.5475ccf15cb8.

two questions that matter here: whether the information Al Jazeera seeks from Phenix is legally relevant, and whether Al Jazeera's subpoena impermissibly invades the work product privilege.

Al Jazeera has simply asserted that any information Phenix has regarding Sly's recantation is relevant, and that Al Jazeera is entitled to it. But material that Al Jazeera was not aware of at the time "The Dark Side" aired could not—as a matter of law—be relevant to the issue of actual malice. And to the extent information about the recantation video (which speaks for itself) is of relevance at all, the most obvious candidate to provide information about it is Charlie Sly himself. His testimony is surely the best evidence of the sincerity of his recantation.

Al Jazeera is also incorrect that information Phenix may possess regarding Sly is not privileged. Information that Phenix and Gibson Dunn collected after they were made aware of Al Jazeera's upcoming broadcast of "The Dark Side," with the singular goal of evaluating the Mannings' legal position and strategy, is squarely privileged or protected by the attorney work product doctrine. Al Jazeera's wispy claims that it could—at some unspecified date and time in the future—make a showing of need sufficient to overcome these protections is baseless, particularly since Al Jazeera can simply subpoena Sly (and has in fact done so) to discover what motivated his recantation.

But, in the end, the Court need not reach these relevance and privilege arguments because Al Jazeera, in its zeal to forestall this reply, failed to file an opposition to Phenix's Motion to Quash. Phenix's motion therefore motion stands unopposed. That is a sufficient basis for this Court to rule in favor of Phenix on its Motion to Quash, and such a ruling would be a fitting response to Al Jazeera's facially improper discovery demands. Phenix respectfully requests that the Court grant its Motion to Quash these subpoenas in their entirety.

2

## ARGUMENT

I.   **AL JAZEERA HAS NOT ADVANCED ANY ARGUMENT JUSTIFYING A DENIAL OF PHENIX'S MOTION TO QUASH.**

All of the information Al Jazeera seeks from Phenix is categorically irrelevant as a matter of law, squarely protected by the attorney-client privilege and work product doctrine, and unduly burdensome discovery to seek from a non-party to this litigation.  The Court should grant Phenix's Motion to Quash.

### A.  The Discovery Al Jazeera Seeks Is Not Relevant To Al Jazeera's Defenses.

Al Jazeera seeks "any and all facts about how the [recantation] video was made" in order "to attack it on legitimate grounds."  Pet'rs' Reply, at 6.  But the information about the recantation video that Al Jazeera seeks cannot, by definition, be relevant to its claims or defenses.  *See* Fed. R. Civ. P. 26(b)(1) (limiting permissible discovery to "any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case" (emphasis added)).  As a matter of law, any factual information in Phenix's possession regarding "how the video was made" is irrelevant to an evaluation of whether Al Jazeera acted with actual malice when it disregarded the recantation and proceeded with the broadcast because "[t]he actual malice inquiry focuses on the defendant's state of mind at the time of publication." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 118 (D.C. Cir. 2017), *cert. denied sub nom. Von Kahl v. Bureau of Nat. Affairs, Inc.*, 138 S. Ct. 366 (2017).  Therefore, information in Phenix's possession that Al Jazeera did not have at the time of publication is irrelevant to its defense.

Al Jazeera does not provide any argument about how information it learns for the first time now could be relevant to its own subjective state of mind years ago, because it cannot do so. In a feeble attempt to undermine this commonsense conclusion, Al Jazeera claims that "[t]he cases on which Phenix relies" concerning the actual malice standard "do not remotely support

3

denial of discovery" because the actual malice standard is not in dispute.  Pet'rs' Reply, at 7.

But this misses the point.  The actual malice standard directly informs the permissible scope of

discovery in a libel action (and the relevance of the materials sought) where an actual malice

defense is raised.  Indeed, "it is hornbook libel law that *post-publication events have no impact*

*whatever* on actual malice" and "the existence or non-existence of such malice must be

determined as of *the date of publication*."  *Secord v. Cockburn*, 747 F. Supp. 779, 792 (D.D.C.

1990) (emphases added).

Accordingly, any documents or communications that Phenix might produce now could

not be probative of Al Jazeera's defense that it did not act with malice in relying on Sly because

Al Jazeera was not in possession of those documents or communications at the time that it made

the decision to disregard Sly's recantation and proceed to publication.  *See, e.g., Bose Corp. v.*

*Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984) (proper inquiry is whether the

defendant "realized the inaccuracy at the time of publication"); *New York Times Co. v.*

*Sullivan*, 376 U.S. 254, 286 (1964) (malice must be evaluated "at the time of publication");

*McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("[T]he

inference of actual malice must necessarily be drawn solely upon the basis of the information

that was available to and considered by the defendant prior to publication."); *see also*

*Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283 (D.D.C. 2017) ("[T]he

defendant's failure to investigate the source's allegation prior to publication can be probative

of actual malice.").

All of these authorities and those cited in Phenix's moving brief thus squarely establish

that information relating to Phenix's investigation that Al Jazeera did not have access to at the

time of publication is irrelevant to any actual malice defense as a matter of law and is therefore

outside the proper scope of discovery.  *Cf. Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 594 (D.C. Cir. 2016) ("What is relevant to malice is the information 'that was available to and considered by [the defendant] prior to publication.'" (citation omitted; alteration added)), *cert. denied*, 137 S. Ct. 1434 (2017).  Al Jazeera should not be permitted to boundlessly pursue information that it did not have access to at the time of publication, because such information is irrelevant to its actual malice defense, and the discovery rules only permit access to potentially relevant information.  Here, Al Jazeera is grasping at straws that it hopes will buttress *post*-publication excuses, which cannot be used to advance its defense that it did not act with actual malice towards the plaintiffs in the underlying litigation.

### B.     The Discovery Al Jazeera Seeks Is Privileged.

Al Jazeera argues that the materials in Phenix's possession relating to Sly are not protected by the attorney-client privilege or attorney work product doctrine.  Pet'rs' Reply, at 8. Al Jazeera offers as an example that "[c]ommunications and documents exchanged between the [Phenix] investigators and Sly and his family are not protected by any privilege."  *Id.*  But Phenix offered those materials to Al Jazeera on more than occasion to resolve this discovery dispute and forestall any future irrelevant and burdensome discovery requests, and Al Jazeera refused, presumably because its true objective is to discover information shared between Phenix, Gibson Dunn, and the Mannings.  To the extent that Al Jazeera is seeking those materials that are plainly protected by the attorney-client privilege or work product doctrine, including the results of Phenix and Gibson Dunn's investigation into Sly on behalf of the Mannings, Al Jazeera's subpoenas should be quashed.

Al Jazeera argues at length that the protections of the attorney work product doctrine do not apply to Phenix's investigation into Sly because "the Mannings never filed a lawsuit against Al Jazeera, and the statute of limitations on any such claim has passed."  Pet'rs' Reply, at 9.

Unsurprisingly, Al Jazeera does not cite any authority for the proposition that work product protection applies only if a lawsuit was actually filed because there is none.  Rather, the D.C. Circuit has held that work product protection applies if the material "can fairly be said to have been prepared or obtained because of the *prospect* of litigation."  *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quotation marks and citation omitted; emphasis added); *see also United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) (same).  For materials "to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).  And, "[t]o qualify for work product protection, litigation need not be actual or imminent; it need only be 'fairly foreseeable.'"  *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 78 (D.D.C. 2003) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)).  Thus, although "some articulable claim, likely to lead to litigation, must have arisen," *Coastal States Gas Corp.*, 617 F.2d at 865, the protection "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is [yet] contemplated."  *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011).  There is absolutely no requirement that a suit need be filed for the protection to apply, and, in fact, materials can qualify for work product protection "even though they were prepared by a desire to avoid . . . a possible suit."  *Cities Serv. Co. v. F.T.C.*, 627 F. Supp. 827, 832 (D.D.C. 1984), *aff'd*, 778 F.2d 889 (D.C. Cir. 1985) (quotation marks and citation omitted; ellipses in original).

Phenix has more than met its burden to show that documents and materials relating to the investigation it conducted at Gibson Dunn's direction are protected under the work product

doctrine, notwithstanding Al Jazeera's conclusory protestations to the contrary.  *See* Pet'rs'
Reply, at 9.  Here, after it became clear that Al Jazeera was interested in broadcasting a
documentary that contained baseless and inflammatory claims about the Mannings, the
Mannings retained outside counsel to develop a legal strategy.  Necessarily, one element of that
strategy involved conducting an investigation to better understand the nature and source of the
claims involving the Mannings.[2]  Gibson Dunn commissioned and directed the investigation
conducted by Phenix in order to prepare the Mannings' legal response, and potentially bring libel
claims against Al Jazeera.  The fact that the other subjects of the same defamatory documentary
brought claims for libel against Al Jazeera provides clear evidence that the prospect of litigation
on behalf of the Mannings was a "real possibility" and that Gibson Dunn's belief in that regard
was more than "objectively reasonable."  *In re Sealed Case*, 146 F.3d at 884.  The Mannings
cannot be penalized for ultimately deciding to avoid litigation.  The protections of the attorney
work product doctrine still apply.

In a fleeting footnote, Al Jazeera claims that that it "should have the opportunity to
demonstrate that it has a 'substantial need' for any fact work product," Pet'rs' Reply, at 10 n. 13
(citation omitted), but since Phenix has established that the materials at issue were prepared in
anticipation of litigation, "[t]he burden . . . shift[ed] to the party seeking discovery for a showing

---

[2]  Al Jazeera appears to have commissioned its own investigation into Charlie Sly, the results
of which it has not yet turned over to the plaintiffs in the underlying litigation.  Case No.
1:16-cv-00013, ECF Dkt. No. 98-1, at 26 ("Specifically, Al Jazeera has refused to collect and
produce documents from its private investigator, Investigative Group International
('IGINT'), who it retained in late-December 2015 to conduct an investigation of Sly after the
Documentary aired.  Aside from stray e-mails associated with this investigation, Al Jazeera
has refused to collect and produce IGINT's investigative file pertaining to Sly, claiming that
it has satisfied its Rule 26 obligations by producing all responsive documents that hit on the
search terms that were negotiated between the parties.").

of 'substantial need' and the 'undue hardship' of securing the information from other sources."
*United States v. AB Electrolux*, No. CV 15-1039 (EGS), 2015 WL 9950141, at *4 (D.D.C. Sept.
25, 2015); *see also Hertzberg*, 273 F. Supp. 2d at 81 ("To overcome . . . work product privilege,
the party seeking discovery must show both (1) a substantial need for the materials, *and* (2) an
inability to obtain the substantial equivalent of the information by other means without undue
hardship." (emphasis in original)).  Accordingly, the burden to "show a 'substantial need' for the
material and an inability to procure equivalent information 'without undue hardship'" shifted to
Al Jazeera after Phenix demonstrated, in its motion, that work product protection applied , and
Al Jazeera's "opportunity" to meet its burden was in its own response brief.  *Deloitte LLP*, 610
F.3d at 135.

Al Jazeera's conclusory statements that the information it seeks is "important" and that it
would face "difficulty . . . in obtaining it elsewhere" do not remotely suffice to meet its burden,
particularly for seeking such discovery from non-parties.  Pet'rs' Reply, at 10 n. 13.  Indeed,
courts have rejected precisely these sorts of statements claiming "a generalized need" for
"factual information about third parties."  *Fed. Trade Comm'n v. Staples, Inc.*, No. CV 15-2115
(EGS), 2016 WL 259642, at *3 (D.D.C. Jan. 21, 2016) (explaining that such statements are "not
equivalent to the substantial need and undue hardship that must be shown in order to compel
production of opposing counsel's work product").  Al Jazeera's chance to further explain the
nature of its supposed difficulty to this Court has passed.  It did not do so because it cannot; for
the reasons discussed above, the information Al Jazeera seeks is irrelevant to its defenses *and* Al
Jazeera can readily obtain the "equivalent information" it seeks elsewhere, including from Sly.
And this claim falls especially flat in view of Al Jazeera's unwillingness to disclose the contents
of its own investigative file about Sly and its outstanding subpoenas to Sly himself.

8

Al Jazeera has also failed to show that any "extreme circumstances" exist that warrant an intrusion into Phenix's protected work product.  *See Fed. Trade Comm'n*, 2016 WL 259642, at *3 (emphasizing that "'undue hardship' is generally found only in extreme circumstances such as unavailability due to death, brain injury or where a witness's geographic location is beyond the court's subpoena power").  Here, "the *factual* information contained within [Phenix's] interview notes and memoranda are equally available to Defendants through their own discovery."  *Id.* (emphasis in original) (rejecting the argument that the "Plaintiffs' interview notes and memoranda provide[d] **the only source** of highly relevant information" because the "Defendants [could] interview or depose as many of the third parties that were interviewed or deposed by the Plaintiffs as desired" (quotation marks and citation omitted; emphasis in original)).  In particular, Al Jazeera can simply question Sly regarding any interactions he had with Phenix in advance of his recantation, and doing so would not compromise the work product protections that are afforded to Phenix's same records of these interactions, many of which undoubtedly reflect Phenix's strategic impressions of Sly.  Indeed, even if the Court were to determine that Al Jazeera had somehow met its burden to show that an exception to the work product doctrine applied, the Court would still need to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  "This type of work product, which is often described as opinion work product, 'is virtually undiscoverable.'"  *Deloitte LLP*, 610 F.3d at 135 (citation omitted).  Thus, because Al Jazeera has not and cannot establish any reason to compel the production of Phenix's protected work product, the Motion to Quash the subpoena as to these protected materials should be granted, and, if it has not already obtained the information it seeks

through its own investigation, Al Jazeera should instead seek this information from the appropriate source: Sly.

      **C.**      **Production of the Discovery That Al Jazeera Seeks Would Create an Undue Burden on the Mannings and Phenix.**

Al Jazeera argues that compliance with its two subpoenas—seeking both documents and testimony from Phenix—would not be burdensome.  Pet'rs' Reply, at 10-12.  Al Jazeera has offered no explanation as to why it needs *both* documents and testimony from Phenix, nor has it even attempted to justify serving such duplicative subpoenas on Phenix.  Moreover, Al Jazeera fails entirely to address the relevant law applicable to Phenix and the Mannings as non-parties.  In particular, it is well settled—despite Al Jazeera's baseless claim that it is "entitled to discovery of *any* relevant non-privileged evidence in the hands of non-parties," Pet'rs' Reply, at 7—that "non-party status is . . . relevant in considering the burden" that a subpoena imposes on the recipient.  *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).  As a result, subpoenas served on non-parties require "a more demanding weighing" to determine whether the relevance of the requested materials justifies such an extraordinary imposition.  *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010); *see also Premier Election Sols., Inc. v. Systest Labs Inc.*, Civ. A. No. 09-1822 (WDM/KMT), 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) ("While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated.").  As shown above, Al Jazeera cannot meet this heightened burden of proof.

Moreover, the Mannings, Phenix, and Gibson Dunn have described the myriad burdens that this discovery creates for the Mannings, in particular.  ECF Dkt No. 16-1, at 12; *see also* Case No. 1:16-cv-000013, ECF Dkt No. 94, at 5-7, 13.  Al Jazeera refuses to recognize (but

cannot refute) that this fishing expedition creates an impermissible burden on the Mannings'

valid attorney-client privilege with Phenix and with Gibson Dunn.  *SEC v. Nat'l Student Mktg.*

*Corp.*, 18 Fed. R. Serv. 2d 1302, 1304 (D.D.C. 1974) (noting that the attorney-client privilege

"of course belongs to the client and is his alone to waive"); *see also Pendergrass v. U.S. Dep't of*

*Justice*, Civ. A. No. 04-112 (CKK), 2005 WL 1378724, at *5 (D.D.C. June 7, 2005) ("the

attorney-client privilege belongs to the client").  The central importance of these privileges are

reflected in the Federal Rules.  In addition to weighing the undue burden on non-parties, courts

may also "quash or modify a subpoena that . . . requires disclosure of privileged or other

protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also In re Micron Tech., Inc. Sec.*

*Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (litigants are not permitted to seek discovery "that call[s]

for privileged matter or would cause an undue burden") (quotation marks and citations omitted).

Al Jazeera should not be permitted to impose such an undue burden on the Mannings, or on their

representative, Phenix, particularly absent any credible claim that the discovery sought is

relevant to the underlying litigation before the Court.

## II.   AL JAZEERA HAS FORFEITED ITS OPPOSITION TO PHENIX'S MOTION TO QUASH, LEAVING PHENIX'S MOTION UNOPPOSED.

The Court, however, does not need to address Al Jazeera's flimsy arguments regarding

relevance, privilege, or burden, as Phenix's Motion to Quash stands unopposed.  Al Jazeera

claims that it need not respond to Phenix's Motion to Quash, and indeed seeks to forestall

Phenix's opportunity to reply.  Pet'rs' Reply, at 3-4.  But Al Jazeera's gambit has forfeited its

opportunity to oppose Phenix's Motion to Quash, and the Court accordingly should rule in favor of Phenix.[3]

Once Phenix filed its Motion to Quash, Al Jazeera became obligated to respond. *See* ECF Dkt. No. 18 (separately docketing Phenix's Motion to Quash); Local Rule LCvR 7(b) (requiring "[w]ithin 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion"). By declining to do so, Al Jazeera has forfeited its opportunity to oppose Phenix's motion and has left Phenix's motion unopposed. Indeed, courts in the District of Columbia routinely enforce Local Rule 7(b) when oppositions are not timely filed. *See, e.g.*, *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (upholding dismissal of amended complaint for failure to comply with Local Rule 7(b)); *Kidwell v. F.B.I.*, 813 F. Supp. 2d 21, 24 (D.D.C. 2011) (granting "three pending motions to dismiss as conceded because the plaintiff failed to respond to them within the time period set by the Court"); *Texas v. United States*, 798 F.3d 1108, 1119 (D.C. Cir. 2015) (upholding award of attorneys' fees given failure of opposing party to present any opposing argument to them, in contravention of Local Rule 7(b)); *Inst. For Policy Studies v. U.S.C.I.A.*, 246 F.R.D. 380, 386 (D.D.C. 2007) (treating motion requesting limited discovery as conceded given opposing party's contravention of Local Rule 7(b)). Similarly, courts in the District of Columbia routinely deem motions conceded when no

---

[3] Al Jazeera takes the position that it need not respond to Phenix's Motion to Quash, purportedly because Phenix "never indicated an intention to quash [the subpoenas] despite multiple" meet-and-confers. Pet'rs' Reply, at 4. During those meet-and-confers, however, Phenix repeatedly offered to produce to Al Jazeera the small set of non-privileged documents in its possession related to Sly, despite their irrelevance. Al Jazeera refused Phenix's offers of compromise—because its true interest is plainly in the privileged materials. Al Jazeera's recalcitrance does not diminish Phenix's right to file its Motion to Quash the baseless and duplicative subpoenas that are improper in the first place.

opposition is timely filed.  *E.g.*, *In re Subpoena No. 444921*, No. 06-167 (HHK/JMF), 2006 WL 2355017, at *1 (D.D.C. Aug. 14, 2006) (deeming motion to quash conceded given failure by opposing party to file opposition).  Accordingly, this Court should enter judgment in favor of Phenix on the ground that Al Jazeera has conceded the Motion to Quash.

*     *     *

Al Jazeera has now served five duplicative subpoenas seeking irrelevant and privileged information from multiple members of the Mannings' legal team, including Phenix.  As a consequence, the Mannings' representatives have been forced to litigate two motions to compel and two motions to quash.  Al Jazeera's unbridled abuse of the discovery process must end here. Absent any relief from this Court, Al Jazeera will undoubtedly persist in its years' long campaign to harass and disparage the Mannings to deflect from its own wrongdoing.  Instead, the Court can and should bar Al Jazeera from further intrusions into the Mannings' private lives and legal matters by entering judgment for Phenix and an order barring Al Jazeera from seeking *any* further discovery from the Mannings or their representatives in connection with the underlying litigation.

## **CONCLUSION**

For the foregoing reasons, the Respondents' Motion to Quash should be granted and the

Court should order Al Jazeera to refrain from seeking further discovery from Phenix.


Dated:  May 2, 2018

Respectfully submitted,

/s/  *Matthew D. McGill*

Matthew D. McGill (D.C. Bar # 481430)
Chantale Fiebig (D.C. Bar # 487671)
Edward C. Patterson (D.C. Bar # 1023902)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, D.C. 20036
(202) 887-3680

*Attorneys for Non-Party*
*Phenix Investigations, Inc.*

14